## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

HORACE DEMOND PULLIAM,     )
                            )
        **Petitioner,**     )
                            )
**v.**                        )        **No. 3:06-0892**
                            )        **Judge Trauger**
**STATE OF TENNESSEE/RICKY BELL,**     )
                            )
        **Respondents.**     )

## MEMORANDUM

The petitioner, proceeding *pro se*, is a prisoner in the Riverbend Maximum Security Institution ("Riverbend") in Nashville, Tennessee. The petitioner names Ricky Bell, Warden at Riverbend, as the respondent.

## I. FACTUAL BACKGROUND

On the evening of July 5, 1998, Anthony Middlebrooks, Serena Stark, and Cory Manning drove in Stark's Ford Mustang to an apartment at 28th and Clifton in Nashville. (Add. 2, Vol. 1, pp. 5, 28) Middlebrooks went inside the apartment while Stark and Manning remained in the car. (Add. 2, Vol. 1, pp. 6, 29) Middlebrooks returned to the car in a hurry, telling Stark and Manning that he had run into someone he had once robbed. (Add. 2, Vol. 1, pp. 7, 29) The three left without delay. (Add. 2, Vol. 1, pp. 7, 29) As they drove away, Stark saw a black male walking to a maroon 1990s Chevrolet Caprice Classic parked in front of the apartment.[1] (Add. 2, Vol. 1, p. 8)

The petitioner saw Middlebrooks when he came into the apartment, but they did not speak. (Add. 2, Vol. 1, pp. 55) After Middlebrooks left, the petitioner borrowed a loaded .44 magnum revolver belonging to Jerome Gregory, brother of Alfonzo Gregory who lived at the apartment. (Add. 2, Vol. 1, pp. 56, 73, 90) The petitioner left the apartment with the .44 magnum within a

---

[1] Stark testified that she worked for Nashville Auto Auction and that she was "very familiar with all different kinds of cars." (Add. 2, Vol. 1, p. 9)

matter of seconds after Middlebrooks, got into his maroon 1991 Caprice Classic, and drove away in a rush "spit[ting] gravel out the driveway when he left." (Add. 2, Vol. 1, pp. 57, 59, 64, 73, 84)

After leaving the apartment, Middlebrooks, Stark and Manning stopped behind another car at a red light at 40th and Clifton in Nashville. (Add. 2, Vol. 1, pp. 9, 30) The maroon Caprice Classic that had been at the apartment pulled up behind the Mustang, the door opened and several shots were fired. (Add. 1, Vol. 1, p. 10) Middlebrooks and Stark were shot. (Add. 2, Vol. 1, pp. 10, 30) The maroon Caprice Classic pulled around the Mustang and turned onto 40th. (Add. 2, Vol. 1, pp. 11, 31)

Wounded, Stark drove straight through the intersection but, when she saw the same maroon Caprice Classic sitting under an underpass ahead of them, she sped past it, stopping at a car wash where two police cars were parked awaiting shift change. (Add. 3, Vol. 1, pp. 11-12, 32) The maroon Caprice Classic sped off, and one of the officers gave chase. (Add. 2, Vol. 1, p. 47) Middlebrooks died before the ambulance arrived. (Add. 2, Vol. 1, p. 49)

The petitioner's maroon Caprice Classic was located the following day, parked in the back yard at his aunt's house. (Add. 2, Vol. 1, p. 143) The car was searched, but no evidence was recovered from it, nor was the .44 magnum from which the shots were fired ever found. (Add. 2, Vol. 1, pp. 145, 150) The petitioner was arrested two days later, on July 7. (Add. 2, Vol. 1, p. 144)

## II. PROCEDURAL BACKGROUND

The Davidson County Grand Jury indicted the petitioner on one count of premeditated first-degree murder in the shooting death of Middlebrooks and two counts of attempted first-degree murder in the shooting of Stark and attempted shooting of Manning. (Add. 1, Vol. 1, pp. 1-3)[2] The petitioner was tried by a jury November 13-15, 2000 (Add. 2, Vols. 1-2) and found guilty of first-

---

[2] Addenda 1-14 were filed with Docket Entry No. 17. Addenda 15-17 were filed with Docket Entry No. 18. Pages missing from the record of the state proceedings were filed with Docket Entry No. 22 and 28.

degree murder and two counts of attempted second-degree murder. (Add. 1, Vol. 1, p. 9; Add. 2, Vol. 2, pp. 248-250) The petitioner's first-degree murder conviction carried an automatic life sentence. (Add. 1, Vol. 1, pp. 10, 19; Add. 2, Vols. 3-4, p. 3) The petitioner was sentenced to eleven (11) years on each of the attempted second-degree murder convictions, both sentences to run consecutive to his life sentence, for an effective sentence of life plus twenty-two (22) years. (Add. 1, pp. 16-17, 19-21; Add. 2, Vols. 3-4, pp. 22-24) The petitioner appealed. (Add. 1, Vol. 1, p. 15)

The petitioner raised three claims on direct appeal: 1) whether the evidence was sufficient to have found him guilty of the offenses; 2) whether the trial court erred in not charging the jury with the lesser included offense of reckless endangerment; and 3) whether the trial court erred in imposing consecutive sentences. (Add. 3) The Tennessee Court of Criminal Appeals ("the Court of Criminal Appeals") affirmed the judgment of the trial court on the first-degree murder conviction, but reversed the convictions for second-degree murder and remanded the case for a new trial on those charges.[3] (Add. 5, pp. 7-9) The Tennessee Supreme Court denied the petitioner's application for permission to appeal on May 28, 2002. (Add. 6) The petitioner did not seek a writ of *certiorari* in the United States Supreme Court. (Docket Entry No. 1, ¶ 9(h), p. 3)

The petitioner filed a *pro se* petition, and an amended petition through counsel, for post-conviction relief. (Add. 7, Vol. 1, pp. 1-28, 45-73) Following an evidentiary hearing on April 30, 2003 (Add. 8), the post-conviction court denied the petition on December 9, 2003. (Add. 7, Vol. 1, pp. 91-110) The petitioner appealed (Add. 7, Vol. 1, pp. 112-113), raising the following nine ineffective assistance of counsel claims:

> 1) Defense counsel was ineffective for not seeking to have the jury foreman dismissed or, in the alternative, for not asking for a mistrial, when counsel learned that one of the prosecutors engaged in *ex parte*

---

[3] The record shows that the petitioner was never retried on those two charges.

communications with the jury foreman during the trial.

2)      Defense counsel was ineffective for not ascertaining the extent of the *ex parte* communications between a prosecution witness and the jury foreman.

3)      Defense counsel was ineffective for not investigating and questioning the extent and nature of the *ex parte* communications between the prosecution's witness and the jury foreman.

4)      Defense counsel was ineffective for not informing the court that, after the *ex parte* communication, the jury foreman attempted to communicate with the petitioner from the jury box during the trial.

5)      Defense counsel was ineffective for not calling material witnesses to testify at trial.

6)      Defense counsel was ineffective for not retaining the services of a ballistics expert to challenge the prosecution's ballistics expert.

7)      Defense counsel was ineffective for not objecting to the prosecutor's asking a witness leading questions on direct examination.

8)      Defense counsel was ineffective for not conferring and consulting with the petitioner, for not seeking discovery, for not investigating the criminal charges, for not interviewing witnesses, and for not developing a working relationship with the petitioner.

9)      Defense counsel was ineffective for not having the petitioner's mental health evaluated.

(Add. 9, p. 3)  The Court of Criminal Appeals affirmed the judgment of the post-conviction court on March 31, 2005 (Add. 11), following which the petitioner's request for permission to appeal in the Tennessee Supreme Court was denied on October 10, 2005 (Add. 14).  Again, the petitioner did not seek a writ of *certiorari* in the United States Supreme Court.

4

The petitioner filed his petition for federal *habeas corpus* relief on September 12, 2006. (Docket Entry No. 1) The petitioner raises the same nine claims in this action that he raised on appeal from the judgment of the post-conviction court. (Docket Entry No. 1, ¶ 12, Ground One, p. 6-6A) During its initial review of this case under Rule 4, Rules – Section 2254 Cases, the court noted that the petitioner sought to hold these proceedings in abeyance while he exhausted other claims in state court. (Docket Entry No. 1, p. 15; Docket Entry No. 3) Observing that the petition might be a mixed petition with both exhausted and unexhausted claims, the court directed the petitioner on September 25, 2006 to clarify the status of his claims. (Docket Entry No. 4)

The petitioner filed a timely response to the court's Order on October 12, 2006. (Docket Entry No. 6) Based on the petitioner's response, the court concluded that the petitioner "merely s[ought] to hold the instant proceedings in abeyance while he pursue[d] additional, yet-to-be-filed litigation in state court unrelated to the claims that [were] . . . before the court." (Docket Entry No. 7) Consequently, the court denied the petitioner's request to hold these proceedings in abeyance on October 19, 2006. (Docket Entry No. 7) The petitioner filed an objection to the court's October 19 Order, reasserting his request to hold the proceedings in abeyance because "the grounds presented for relief are not exhausted, nor have they been properly litigated."[4] (Docket Entry No. 8)

The respondent filed an Answer on February 12, 2007, providing a copy of the record of the state court proceedings. (Docket Entry No. 16-17, 22-28) The petitioner did not file a response to

---

[4] The petitioner sought to hold these proceedings in abeyance to permit him to pursue a claim of "actual innocence" based on the theory that Detective E.J. Bernard, the lead detective in his case, was a "Dirty Cop" who fabricated evidence that led to the petitioner's conviction. A review of the record shows that the petitioner raised his "Dirty Cop" theory on post-conviction in the context of an ineffective assistance claim. (Add. 7, Vol. 1, pp. 16-17, 66-67) The post-conviction court ruled that the petitioner had "provided no proof of police fabrication" and that his "generalized assertion that police frequently commit perjury fails to provide a basis for relief." (Add. 7, Vol. 2, p. 21) The petitioner did not renew this claim, including the "Dirty Cop" factual predicate, on appeal from the judgment of the post-conviction court. (Add. 9) Moreover, a review of the documents filed by the petitioner in his effort to hold these proceedings in abeyance shows that the alleged newly discovered evidence would not establish his "actual innocence," which is what he claims the newly discovered evidence would show. Having reviewed the petitioner's motion in the context of the foregoing, the court concludes that its initial Order (Docket Entry No. 7) was proper.

5

the Answer.

### III. ANALYSIS

Petitions for federal *habeas corpus* relief filed after April 24, 1996 are subject to the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *See Martin v. Mitchell*, 280 F.3d 594, 602 (6ᵗʰ Cir. 2002)(citing *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1977). Title 28 U.S.C. § 2254, as amended by the AEDPA, provides the following with respect to granting a writ of *habeas corpus* to prisoners who are in custody pursuant to a state court judgment:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "unreasonable application" of clearly established federal law differs from an "incorrect application." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). Under the former, "a federal *habeas corpus* court may grant relief if the state court identifies the governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. The latter clause is satisfied when a state court "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law or . . . decides a case differently than the Court . . . on a set of materially indistinguishable facts." *Id*. at 364-65. Where state courts have made factual determinations regarding issues presented for federal *habeas corpus* review, such

6

determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Miller-el v. Cockrell*, 537 U.S. 322, 324 (2003). Under the AEDPA, the purpose of federal *habeas corpus* review is to "ensure that state court convictions are given effect to the extent possible under the law," not to conduct a federal re-trial. *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The claims before the court in this action all allege ineffective assistance of counsel. The respondent argues in each instance that the Court of Criminal Appeals identified *Strickland v. Washington*, 466 U.S. 668 (1984) as controlling in those instances where ineffective assistance of counsel is alleged, the Court of Criminal Appeals found that the petitioner had failed to satisfy one or both of the two-part test under *Strickland*, and the Court of Criminal Appeals' application of *Strickland* was neither contrary to nor an unreasonable application of existing Supreme Court precedent. (Docket Entry No. 16, pp. 19-23)

To prevail on a claim of ineffective assistance of counsel, a *habeas corpus* petitioner must show deficient performance and prejudice. *See Bell*, 535 U.S. at 694-695. Trial counsels' performance is deficient when it falls below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 686-87; *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000). In determining whether an attorney performed in an objectively unreasonable manner, courts employ "highly deferential" scrutiny. *Id*. at 689. To satisfy the prejudice requirement, an ineffective assistance claimant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "The determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996)(quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992)(*en banc*),

7

*cert. denied*, 508 U.S. 975 (1993)).

**A.      Petitioner's Ineffective Assistance Claims Generally.**

As previously noted, the petitioner's ineffective assistance claims in this action are identical to those enumerated 1) through 9) *supra* at pp. 3-4.[5]  However, the petitioner has failed to provide any argument, references to the record, or citations to relevant legal authority in support of any of these claims, nor can any argument, reference, or citation be gleaned from the record before the court.  In other words, the petitioner's claims constitute nothing more than nine naked allegations.  Although the petitioner has had ample opportunity to elaborate on his claims, he has not done so.

The Sixth Circuit has held that conclusory allegations, *i.e.*, those without supporting factual allegations or evidentiary support, do not provide a basis for *habeas corpus* relief. *See Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)(citing *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3rd Cir. 1991)(bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in federal *habeas corpus* proceedings).  Because of the conclusory nature of the petitioner's claims, he is not entitled to federal *habeas corpus* relief and, as such, his petition is subject to dismissal on this ground alone.  *Id.*

Notwithstanding that the petitioner's ineffective assistance claims are subject to dismissal for being conclusory, the court will address the merits of the claims anyway.  The following analysis is based on the facts alleged in the petitioner's petition and amended petition for post-conviction relief and in his brief on appeal from the judgment of the post-conviction court.

**B.      Defense Counsel was Ineffective for Not Requesting the Dismissal of the Jury Foreman, or in the Alternative a Mistrial, When the Prosecutor Engaged in *Ex***

---

[5]  The petitioner only makes specific reference to claims 1) and 2), *supra* at pp. 3-4, in his petition.  (Docket Entry No. 1, Grounds One and Two, pp. 6-7)  However, the petitioner refers the court to "attached pg 6a" of his petition which lists all nine issues that he raised in his brief on appeal from the judgment of the post-conviction court.  Although the petitioner does not mention the other seven claims as specific grounds for relief in the petition, the court liberally construes the petitioner's reference to page 6A to incorporate those additional claims by reference.

*Parte* Communications with the Jury Foreman During the Trial.

C.   **Defense Counsel was Ineffective for Failing to Ascertain the Extent of the *Ex Parte* Communications Between the Jury Foreman, the Prosecutor, and a Witness for the Prosecution.**

D.   **Defense Counsel was Ineffective for Failing to Investigate and Question the Extent and Nature of *Ex Parte* Contact Between the Prosecutors and the Jury Foremen.**

E.   **Defense Counsel was Ineffective for Not Informing the Court That the Jury Foreman Attempted to Communicate with the Petitioner from the Jury Box During the Trial after the *Ex Parte* Communications.**

The thrust of these four claims is that Assistant Attorney General Bret Gunn ("General Gunn"), one of the two prosecutors, said – out of court – to the jury foreman, whom General Gunn thought was the bonding agent in a different criminal case, that "the man got convicted last week on drug charges" and he was "going to get a substantial amount of time," to which Officer Henry Collins ("Officer Collins"), a witness for the State in the petitioner's criminal case who was sitting nearby replied, "well that is good . . . ." (Add. 7, Vol. 1, pp. 4-6, 54-57; Add. 9, p. 14) General Gunn brought the incident to the trial court's attention; however, defense counsel did not press the issue beyond what General Gunn told the trial court, nor did he seek to have the juror replaced. (Add. 2, Vol. 2, p. 175-179, 182-184) The petitioner also claims that the jury foreman tried to communicate with him from the jury box afterward but that defense counsel did not bring the alleged incident to the trial court's attention. (Add. 7, Vol. 1, pp. 4-6, 54-57; Add. 9, p. 15) Because these claims are interrelated, the court will address them together as the state courts did.

The petitioner, General Gunn, Officer Collins, and defense counsel, all testified as to these claims at the post-conviction evidentiary hearing. (Add. 8, pp. 14-19, 62-74, 120-121) The evidence adduced at the evidentiary hearing established that: 1) General Gunn brought the matter

9

to the trial court's attention of his own volition; 2) the statement made to the juror was inadvertent; 3) the statement had nothing to do with either the petitioner or his case; 4) General Gunn wanted the juror removed because he was concerned that the juror would hold the incident against the prosecution; 5) the prosecution would have benefitted had the juror been removed because, in General Gunn's view, the alternate juror was more favorable to the prosecution; 6) defense counsel did not press to remove the juror because, in his view, the alternate juror would have presented more of a problem to the defense. (Add. 8, pp. 62-74)

In its opinion, the post-conviction court identified *Strickland* as controlling in those instances where ineffective assistance of counsel is alleged. (Add. 7, Vol. 2, pp. 9-10) In applying *Strickland*, the post-conviction court found that defense counsel's decision not to press to have the juror removed was "a strategic one," and that the petitioner had failed to demonstrate he was prejudiced by that decision. (Add. 7, Vol. 2, p. 12)

The petitioner raised these claims on appeal from the judgment of the post-conviction court. (Add. 9, pp. 13-16) The record shows that, in considering these claims, the Court of Criminal Appeals also identified *Strickland* as controlling where ineffective assistance of counsel is alleged and reviewed the facts pertaining to these claims under the two-part *Strickland* test. (Add. 11, pp. 9-10) In affirming the judgment of the post-conviction court, the Court of Criminal Appeals also concluded that defense counsel's decision not to remove the juror was a strategic one and that the petitioner had failed to establish that he was prejudiced. (Add. 11, pp. 9-10)

The record supports the state courts' rulings on these claims. Therefore, this court finds that the state courts' determinations of these claims was neither contrary to nor an unreasonable application of clearly established federal law. The court also finds that the state courts' factual determinations with respect to these claims are entitled to the presumption of correctness. *See Abdur*

10

'*Rahman v. Bell*, 226 F.3d 696 702-703 (6th Cir. 2002)(the state courts' findings of fact underlying their ineffectiveness inquiry are entitled to the presumption of correctness).  For these reasons, the petitioner is not entitled to *habeas corpus* relief.

## Certificate of Appealability

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  The court has conducted an individual analysis of each of these four claims and finds that the petitioner has not made a substantial showing of a denial of a constitutional right.  Therefore, a COA will not issue as to these claims.

**F.     Defense Counsel Was Ineffective for Not Calling Material Witnesses to Testify at Trial.**

In this claim, the petitioner alleges that defense counsel was ineffective for not calling Constance Lee McEwen Campbell[6] ("Constance Campbell") to testify at trial.  (Add. 7, Vol. 1, pp. 13-14, 63-64; Add. 9, pp. 16-17)  In his brief on appeal from the judgment of the post-conviction court, the petitioner argued that Campbell's testimony would have: 1) cast doubt on whether he was the shooter because he was known to carry a "small silver gun" and not a .44 magnum which was used in the shootings; and 2) discredited Jerome and Alfonzo Gregory's testimony that the petitioner took Jerome's .44 magnum revolver with him after Middlebrooks left the apartment.[7]  (Add. 9, pp.

---

[6]  Constance Campbell also is referred to as Constance McEwen in the record.

[7]  The petitioner did not mention on post-conviction that a third person, Antwan Nesby, also testified at trial that Pulliam took the .44 magnum with him when he left the apartment.  (Add. 2, Vol. 1, pp. 89-90)  The court concludes without deciding that the petitioner alleges that Campbell's testimony would have challenged Nesby's testimony as well.

11

The post-conviction court addressed this issue during the evidentiary hearing held on April 30, 2003, granting a continuance until May 21, 2003 so that Constance Campbell, who had been subpoenaed to testify at the evidentiary hearing but did not appear, could testify. (Add. 8, pp. 110-114, 139-152) A review of the transcript of Constance Campbell's eventual testimony shows that, apart from testifying that she knew the petitioner to carry a small silver gun and that she had been with the petitioner sometime the morning of the shootings, she did not see the petitioner after he left her that morning, and she knew nothing of events prior to the shootings. (Add. 8, pp. 148-152)

The post-conviction court ruled that Campbell's testimony was not exculpatory, that defense counsel's decision not to call her was a strategic one because of "her incoherency and her appearance," and that the petitioner had failed to show that he had been prejudiced by defense counsel's decision not to call her as a witness. (Add. 7, Vol. 2, p. 13) The Court of Criminal Appeals agreed. (Add. 11, p. 10)

The record supports the state courts' rulings on this claim. Therefore, this court finds that the state courts' determination of this claim was neither contrary to nor an unreasonable application of clearly established federal law. The court also finds that the state courts' factual determinations with respect to this claim are entitled to the presumption of correctness. *See Abdur 'Rahman*, 226 F.3d at 702-703. Accordingly, the petitioner is not entitled to *habeas corpus* relief.

### Certificate of Appealability

The court finds that the petitioner has not made a substantial showing of a denial of a constitutional right. Therefore, a COA will not issue as to this claim.

**G.** **Defense Counsel Was Ineffective for Not Calling a Ballistics Expert to Challenge the Prosecution's Ballistics Expert.**

Here, the petitioner's claim is that defense counsel was ineffective for not retaining an expert

12

witness to challenge the testimony of TBI Special Agent Teri Arney, the state's ballistics expert who testified at trial. (Add. 7, Vol. 1, pp. 9-10, 59-60; Add. 9, pp. 17-18)  The thrust of the petitioner's argument is that a defense expert would have testified that the markings on bullets change over time.[8] (Add. 7, Vol. 1, pp. 9-10, 59-60; Add. 9, pp. 17-18)

Special Agent Arney testified at the evidentiary that it was "certainly possible" for the markings on a bullet fired from the same gun to change over time. (Add. 8, p. 77)  However, she also testified that "typically you're able to match bullets back to a gun for quite a period of time before it changes enough that you would no longer be able to do that." (Add. 8, p. 77)  The petitioner provided no expert testimony in support of his claim at the evidentiary hearing. Moreover, it is apparent from Special Agent Arney's testimony that any change in markings is a phenomenon that occurs from use over a long period of time, circumstances that were not present between the time of the shootings and when Special Agent Arney conducted the tests.

The post-conviction court determined that, because the "defense was proceeding on a misidentification theory," "bringing in a ballistics expert would not necessarily be helpful and would be inconsistent with the defense theory." (Add. 7, Vol. 2, p. 17)  Based on the defense's strategy, the post-conviction court ruled that the petitioner had failed to show that he was prejudiced by defense counsel's representation. (Add. 7, Vol. 2, p. 17)  Agreeing, the Court of Criminal Appeals also found that "the petitioner failed to present testimony of an expert at the post-conviction hearing," that an article presented at the evidentiary hearing "from an 'online publication' on ballistics . . . was not relevant . . . ," and "that the petitioner . . . failed to show that he suffered any prejudice." (Add. 11, pp. 10-11)

---

[8] At the evidentiary hearing, Special Agent Arney also was asked whether the bullets she examined were chemically tested, to which she replied, "No." (Add. 8, p. 78)  Although the question of chemical testing was addressed at the evidentiary hearing (Add. 8, pp. 78-81), the issue of chemical testing was not raised on appeal from the judgment of the post-conviction court. (Add. 9, pp. 17-18)  Therefore, the court concludes that chemical testing does not constitute a factual predicate of this claim in this action.

The record supports the state courts' rulings on this claim. Therefore, the court finds that the state courts' determination of this claim was neither contrary to nor an unreasonable application of clearly established federal law. The court also finds that the state courts' factual determinations with respect to these claims are entitled to the presumption of correctness. *See Abdur 'Rahman*, 226 F.3d at 702-703. For these reasons, the petitioner is not entitled to *habeas corpus* relief.

**Certificate of Appealability**

The court finds that the petitioner has not made a substantial showing of a denial of a constitutional right. Therefore, a COA will not issue as to this claim.

**H. Defense Counsel Was Ineffective for Not Objecting to the Prosecutor's Leading a Witness on Direct Examination.**

The petitioner alleges that defense counsel was ineffective because he failed to object to leading questions that General Gunn asked Jerome Gregory on direct examination. (Add. 7, Vol. 1, pp. 7, 57; Vol. 9, p. 18) A review of the record shows that, although the petitioner addressed this issue during his testimony at the evidentiary hearing, he did not raise the issue in the context of leading the witness on direct. Instead, the petitioner addressed this claim solely in the context of discovery. (Add. 8, p. 19) General Gunn was not asked any questions on this claim when he testified at the evidentiary hearing. (Add. 8, pp. 61-66) Although defense counsel was asked about Jerome Gregory's testimony at the evidentiary hearing, once again, the questions pertained only to discovery related matters. (Add. 8, pp. 104, 118).

In its opinion, the post-conviction court wrote that it "reviewed the transcript and finds Petitioner's complaint to be without merit." (Add. 7, Vol. 2, p. 14) The Court of Criminal Appeals ruled, in turn, that "[t]he evidence does not preponderate against the trial court's determination." (Add. 11, p. 11) Neither court appears to have reviewed this claim in the context of ineffective assistance of counsel. Therefore, it falls to this court to apply *Strickland*.

14

In both his petition and amended petition for state post-conviction relief, the petitioner refers to p. 74 in the trial transcript as the basis for his claim. The relevant colloquy between General Gunn and Jerome Gregory is as follows:

Q        And did you tell the detectives what happened?

A        Yes, Sir.

Q        Now did you tell them everything about the gun at that time?

A        No, sir.

Q        And why didn't you?

A        Scared.

Q        Scared of what?

A        Of them trying to put me in it.

Q        That the police would try to put you in it?

A        Yeah.

Q        ***Did you later tell the truth about the gun?***

A        No. Sir.

Q        ***When was the first time that you told me the truth about the gun?***

A        When you came to see me.

Q        When was that?

A        Today.

Q        What had you told prior to today about the gun?

15

| A | That he picked, he picked it up off the floor. |
|---|---|
| **Q** | ***Okay. So you were telling that he got the gun, but not telling completely how he got it?*** |
| A | Uh-huh (meaning yes). |

(Add. 2, Vol. 1, pp. 73-74)(emphasis added)  Although one or more of the questions at issue, highlighted above, may be considered leading in a technical sense, when viewed in the context of the entire line of questioning, it is clear that the prosecution laid the proper foundation before asking the questions.  In other words, the witness admitted to having lied to the police in response to questions that were properly presented before the questions at issue were asked.

Despite the state courts' scant coverage of this issue, this court finds that defense counsel's representation was not deficient because he did not object to the questions at issue.  The court also finds that the petitioner was not prejudiced because defense counsel did not object.  Because the facts pertaining to this claim do not support a finding of ineffective assistance under *Strickland*, the petitioner is not entitled to *habeas corpus* relief.

### Certificate of Appealability

The court finds that the petitioner has not made a substantial showing of a denial of a constitutional right.  Therefore, a COA will not issue as to this claim.

16

I.      **Defense Counsel Was Ineffective for Not Conferring and Consulting with the Petitioner, for Not Seeking Discovery, for Not Investigating the Criminal Charges, for Not Interviewing Witnesses, and for Not Developing a Working Relationship with the Petitioner.**

The record establishes that the following factual predicates comprise this claim: 1) defense counsel did not develop or present evidence that the petitioner's car did not have tinted windows as the shooter's car was said to have had; 2) defense counsel did not provide the petitioner with the names of witnesses or copies of the witnesses statements; and 3) defense counsel did not subpoena Constance Campbell, DeShawn Campbell, and Scott Endevra as witnesses. (Add. 7, Vol. 1, pp. 8, 18, 58, 68; Add 9, pp. 19-20)  The post-conviction court found that the petitioner had failed to establish that he was prejudiced by defense counsel's alleged deficient representation. (Add. 7, Vol. 2, pp. 12-16, 22)  The Court of Criminal Appeals concurred.  (Add. 11, p. 11)

With respect to the description of the petitioner's car, the post-conviction court found no basis for the petitioner's claim because a photograph of his automobile showing that it did not have tinted windows was entered into evidence at trial as Exhibit 13.  (Add. 7, Vol. 2, p. 22)  As to the second factual predicate in this claim, the post-conviction court found that, based on notes contained in defense counsel's files, defense counsel "met with Petitioner on multiple occasions, provided Petitioner with transcripts of all of the State's audio and video taped evidence, and discussed with him the merits of his case and possible defense strategies." (Add. 7, Vol. 2, pp. 15-16)  The Court of Criminal Appeals concurred.  (Add. 11, p. 11)  As to the three witnesses whom the petitioner claims ought to have been called to testify at trial, as previously explained, *supra* at pp. 11-12, the petitioner's claim pertaining to Constance Campbell is without merit.

The record supports the state courts' rulings on the foregoing factual predicates.  Therefore, the court finds that the state courts' determination of these factual predicates was neither contrary to nor an unreasonable application of clearly established federal law.  The court also finds that the

17

state courts' factual determinations with respect to these claims are entitled to the presumption of correctness. *See Abdur 'Rahman*, 226 F.3d at 702-703. For these reasons, the petitioner is not entitled to *habeas corpus* relief as to these factual predicates.

Although the remaining two witnesses were addressed at the evidentiary hearing, neither the post-conviction court nor the Court of Criminal Appeals addressed them in their opinions. Therefore, it once again falls to this court to apply *Strickland*.

With respect to Scott Endevra, this witness is not mentioned by name in the context of this claim in either the petitioner's petition or amended petition for post-conviction. (Add. 7, Vol. 1, pp. 8, 58) Although the petitioner testified at the evidentiary hearing that he told defense counsel about Scott Endevra (Add. 8, p. 23), apart from a single statement to that effect, Scott Endevra was not mentioned again. In his brief on appeal from the judgment of the post-conviction court, the petitioner's argument with respect to Scott Endevra is as follows: "Petitioner testified that he requested counsel to subpoena three witnesses for his defense, Constance McEwen Campbell, DeShawn Campbell and Scott Endevra. . . . Those witnesses were never called . . . ." (Add. 9, p. 20) For the reasons previously explained, *supra* at p. 8, this factual predicate is conclusory and, as such, without merit.

As to the third witness, DeShawn Campbell, t he petitioner testified at the evidentiary hearing that he told defense counsel about him prior to trial. (Add. 8, p. 23) The record shows that, although a subpoena had been issued to DeShawn Campbell to testify at the evidentiary hearing, he did not appear. (Add. 8, p. 97) The post-conviction court continued the evidentiary hearing for three weeks, admonishing post-conviction counsel to "[g]et your subpoenas taken care of . . . ." (Add. 8, p. 140) However, DeShawn Campbell did not testify when the evidentiary hearing reconvened on May 21, 2003. (Add. 8, pp. 97, 143-165)

Although DeShawn Campbell did not testify at the evidentiary hearing, Kenneth Neil did.

18

Neil, who first became acquainted with the petitioner's case while they were in prison, testified that he and DeShawn Campbell were standing "on the sidewalk" in the projects and that he saw the petitioner for "approximately . . . five minutes" between 10:00 and 11:00 p.m. on the night of the shooting, as the petitioner "was getting in his car . . . ." (Add. 8, pp. 89-99)  Although Neil's testimony was hearsay as to what DeShawn Campbell's testimony would have been, Neil's testimony was clearly admissible as to what he saw.

In addition to Neil's testimony, evidence also was introduced at the evidentiary hearing that the private investigator hired by defense counsel reported to defense counsel that the petitioner left the apartment to give a shotgun to DeShawn Campbell. (Add. 8, p. 122)  It is important here to note that the post-conviction judge observed that the petitioner "never mentions anything about DeShawn Campbell or anything in his testimony . . . ."  (Add. 8, p. 129)  The judge's statement appears to have been intended to reconcile the apparent conflict between the judge's recollection of the petitioner's testimony at trial and the report filed by the defense's private investigator. (Add. 8, pp. 122, 128-129)  However, a review of the trial transcript shows that the petitioner did, in fact, testify at trial that he went to the projects after he left the apartment to give the shotgun to DeShawn Campbell.  (Add. 2, Vol. 2, pp. 221, 223-224, 235-236)

From the private investigator's report and the petitioner's testimony at trial, it appears that defense counsel knew, or should have known, about DeShawn Campbell prior to trial.  Assuming for the sake of argument that defense counsel's representation was deficient for not calling DeShawn Campbell to testify at trial, the question remains whether the petitioner was prejudiced because he did not.

The record shows that Neil did not know about the shootings until he met the petitioner in

19

prison, at the earliest, two-plus years after the fact.[9]  Neil's recollection of when he actually saw the petitioner was called into doubt by his unresponsive answer to the post-conviction judge's question regarding how he could be certain that he saw the petitioner and DeShawn Campbell together on the night of the shootings, given that Neil did not know about the shootings until after he met the petitioner in prison.  (Add. 8, p. 93)  Neil's recollection is all the more incredible, given that Neil did not mention the shotgun that the petitioner claims to have taken to DeShawn Campbell, a shotgun that the petitioner described at trial as "a real fancy, riot pump . . . nickel plated . . . ." (Add. 2, Vol. 2, p. 215)  Inasmuch as Neil and DeShawn Campbell were standing together "on the sidewalk" (Add. 8, p. 96) when they allegedly saw the petitioner, a fancy nickel-plated shotgun in DeShawn Campbell's possession would have been obvious if the petitioner had, in fact, taken the shotgun to DeShawn Campbell as he claims.

In addition to the foregoing, as previously noted, Neil's testimony was that he had seen the petitioner for approximately 5 minutes between 10:00 and 11:00 p.m.  Testimony at trial established the time of shooting at approximately 10:30 p.m.  (Add. 2, Vol. 1, pp. 46)  Evidence was adduced at the post-conviction evidentiary hearing that, even if the petitioner had met DeShawn Campbell where the petitioner claims he did, the location where they met was "still very close to the scene of th[e] homicide."  (Add. 8, p. 103)  Given that Neil allegedly saw the petitioner at a location that was "very close" to where the shootings occurred, Neil's testimony that he saw the petitioner for approximately 5 minutes between 10:00 and 11:00 p.m. did not provide clear and convincing evidence that he saw the petitioner prior to the shootings, *i.e.*, during the time frame that would have made it impossible for him to be the shooter.  In other words, Neil's testimony did not provide clear

---

[9] Neal testified on cross-examination that he had been incarcerated for two and one-half years.  (Add. 8, p. 92)  Therefore, if Neal did not know of the shootings until he met the petitioner in prison, the earliest he could have known about them was two and one-half years after the fact.

and convincing evidence that he did not see the petitioner in the half hour either before or <u>after</u> the shootings, if at all.

For the reasons explained above, the court finds that the petitioner has failed to establish that he was prejudiced because defense counsel did not call DeShawn Campbell as a witness at trial. Because the petitioner fails to satisfy both parts of the two-part test under *Strickland*, he is not entitled to federal *habeas corpus* relief on this final factual predicate.

**Certificate of Appealability**

The court finds that the petitioner has not made a substantial showing of a denial of a constitutional right. Therefore, a COA will not issue as to any part of this claim.

**J.     Defense Counsel Was Ineffective for Not Having the Petitioner's Mental Health Evaluated**.

The substance of this claim on post-conviction was that defense counsel was ineffective for not ordering a psychiatric evaluation, because the petitioner chose to wear his prison uniform to trial rather than a suit, and because he testified at trial that he was on drugs.[10] (Add. 7, Vol. 1, pp. 8, 58) In his brief on appeal from the judgment of the post-conviction court, the petitioner revised this claim to include that defense counsel was ineffective for not "pursu[ing] a hearing [to] investigate a defense of insanity" because of his "incoherent and unwieldy responses to the court" during the trial. (Add. 9, pp. 20-22)

The petitioner offered the following testimony at the evidentiary hearing in response to his attorney's request that he explain this claim:

> A.     Well, obviously you ain't going to be yourself.   I

---

[10]   In his petition and amended petition for post-conviction relief, the petitioner asserts "on direct examination [he] testified that he was on drugs." The court has reviewed the transcript of the evidence at trial. Nowhere does the petitioner testify that he was on drugs at the time of trial. The court concludes, therefore, that the petitioner's claim is that defense counsel was ineffective for not ordering a psychological evaluation because the petitioner admitted that he had been smoking marijuana at the time of the shootings.

wasn't myself, you know what I'm saying. That
should have been, you know what I'm saying, went
on record. Somebody should have come and talked to
me that day. I mean, that day I didn't even want to,
you know what I'm saying, present myself properly.

Q     And you're referring to the incident where you
      wanted to wear your uniform clothes?

A     Just my state of mind period. I mean, you're here for
      something you didn't do, I mean, I shouldn't have
      been there.

Q     Did you feel that on that day you weren't functioning
      properly?

A     No. I don't think nobody would be functioning
      properly, you know what I'm saying, sitting, you
      know what I'm saying, in front of twelve people and
      some judge on something you didn't do.

Q     Do you feel like that may have affected your ability to
      understand what was going on during the
      proceedings?

A     I mean most definitely. I paid attention to what was
      going on, but I was not myself.

(Add. 8, pp. 24-25)

        The following additional evidence was adduced at the evidentiary hearing pertaining to the

petitioner's competency at the time of trial. Notes exchanged between defense counsel and the

petitioner during *voir dire,* introduced into evidence at the evidentiary hearing, showed that, when

defense counsel advised the petitioner that he probably would be convicted of at least second degree

murder and that there was a good chance he would be convicted of first-degree murder, "which

would be life, fifty-one years at a hundred percent," the petitioner endeavored to reenter plea

negotiations with the prosecution. (Add. 8, pp. 107-108) Defense counsel testified that, after

"General Gunn got over the shock of plea negotiations during the voir dire . . . the ante was up to

twenty-five years," five years more than the original offer.  (Add. 8, p. 108)  Defense counsel testified further that the petitioner had him "figure the percentage difference on each one for him and then decided, no, he wasn't going to take that extra five years, we would go on with the trial."  (Add. 8, p. 108)  According to defense counsel, "that didn't appear to . . . be someone who wasn't aware, cognizant of what was going on."  (Add. 8, p. 108)

The post-conviction court found the petitioner's argument, based on his decision to wear his prison uniform to trial rather than a suit, to be "nonsensical."  (Add. 7, Vol. 2, p. 16)  The post-conviction court also ruled that "[t]here was no issue as to Petitioner's competency to stand trial and . . . the Petitioner's assertion he should have been evaluated by a psychiatrist to be meritless."  The Court of Criminal Appeals ruled that "[t]he record supports this finding . . . ."  (Add. 11, p. 11)

The record supports the state courts' rulings on this claim.  Therefore, the court finds that the state courts' determination of this claim as it pertains to the clothing issue and alleged drug use was neither contrary to nor an unreasonable application of clearly established federal law.  The court also finds that the state courts' factual determinations with respect to these factual predicates are entitled to the presumption of correctness.  *See Abdur 'Rahman*, 226 F.3d at 702-703.  Accordingly, the petitioner is not entitled to federal *habeas corpus* relief on this part of his claim.

As to the petitioner's alleged "incoherent and unwieldy" testimony at trial, this factual predicate was not raised until the petitioner raised it in his brief on appeal from the judgment of the post-conviction court.  (Add. 9, pp. 20-21)  More particularly, he had not raised this factual predicate in either his petition or amended petition for post-conviction relief, nor did he raise it during the evidentiary hearing.[11]  The record also shows that neither the post-conviction court nor the Court of

---

[11]  The court notes for the record that it has read the transcript of the petitioner's testimony at trial and finds no evidence of "incoherent and unwieldy" testimony, or any evidence that he was unaware of his situation.  In fact, the record shows that the petitioner consistently engaged in verbal jousting with the prosecution in an effort to avoid answering the prosecution's questions.

23

Criminal Appeals addressed this factual predicate in their opinions. (Add. 7, Vol. 2, p. 16; Add. 11) For these reasons, this factual predicate is unexhausted.

The AEDPA places notable restrictions on a federal court's ability to grant *habeas corpus* relief to state prisoners. First, federal *habeas corpus* courts may only consider claims that a *habeas* petitioner has previously raised before the state courts. *See* 28 U.S.C. § 2254(b); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002). Claims that have not been raised in state court are deemed unexhausted and ordinarily are dismissed, without prejudice, so that the *habeas* petitioner may pursue them in state court. *Alley*, 307 F.3d at 385 (citing *Rose v. Lundy*, 455 U.S. 509, 518 (1982)). However, if the petitioner is barred from raising an unexhausted claim in state court due to a state procedural rule, then that claim is procedurally defaulted for purposes of federal *habeas corpus* review. *See Coleman v. Thompson*, 501 U.S. 722, 752-753 (1991). A claim also is procedurally defaulted where that claim was presented to the state court, but the court, rather than reaching the merits of the claim, relied on an independent and adequate state ground, such as a state procedural rule barring review of the claim, in deciding the issue. *Id.* at 734-735.

If a claim is procedurally defaulted, then federal *habeas corpus* review is prohibited unless the petitioner demonstrates both "cause" <u>and</u> "prejudice" for his failure to raise the claim in state court while state court remedies were available, or that a miscarriage of justice will result if the claim is not reviewed. *Alley*, 307 F.3d at 386; *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000). To establish "cause," a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials' made compliance impracticable," constitutes "cause" under this standard. *Murray*, 477 U.S. at 488 (citations omitted); *see also Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002)("Cause

24

is shown when the factual basis of the claim was 'reasonably unknown' to the defendant's counsel."). To show "prejudice," default of the claim must not merely have created a possibility of prejudice to the defendant, but it must have "worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *Jamison*, 291 F.3d at 388 (citing *United States v. Frady*, 456 U.S. 152, 170-171 (1982)). Finally, to demonstrate a "fundamental miscarriage of justice," a petitioner must show that the alleged constitutional violation probably resulted in the conviction of one who actually is innocent. *Murray*, 477 U.S. at 496. This exception applies only in "extraordinary cases," *Id.*, and requires a petitioner to show that he is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Tennessee's post-conviction statute, Tenn. Code Ann. § 40-30-102 (1995), provides, *inter alia*, that:

> Except as provided in subsections (b) and (c), a person in custody under a sentence of a court of this state must petition for post-conviction relief under this part within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of such petition shall be barred. The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity. Time is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file such an action and is a condition upon its exercise.

*Id.* at § (a). The Tennessee post-conviction statute goes on to state that:

> This part contemplates the filing of only one (1) petition for post-conviction relief. In no event may more than one (1) petition for post-conviction relief be filed attacking a single judgment. If a prior petition has been filed which was resolved on the merits by a court of competent jurisdiction, any second or subsequent petition shall be summarily dismissed. A petitioner may move to reopen a post-conviction proceeding that has been concluded, under the limited circumstances set out in § 40-30-117.

*Id.* at § (c). The limited circumstances in Tenn. Code Ann. § 40-30-117 (1995) are that:

    (1)    "The claim in the motion is based on a final ruling of an appellate court establishing a constitutional claim that was not recognized as existing at the time of trial. . . ."

    (2)    "The claim in the motion is based upon new scientific evidence establishing that such petitioner is actually innocent . . . ."

    (3)    "The claim asserted in the motion seeks relief from a sentence that was enhanced because of a previous conviction and such conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid . . . ."

    (4)    "It appears the facts underlying the claim, if true, would establish by clear and convincing evidence that the petitioner is entitled to have the conviction set aside or the sentence reduced."

*Id.* at §§ (a)(1)-(a)(4).

The petitioner's conviction became final on August 26, 2002, ninety (90) days after the Tennessee Supreme Court denied his application for permission to appeal after the petitioner could have sought a writ of *certiorari* in the United States Supreme Court, even though he did not. Because more than one year has passed since the judgment in the petitioner's case became final, he is time-barred under Tenn. Code Ann. § 40-30-102(a) from filing a petition for post-conviction relief. Moreover, because the petitioner has already filed one post-conviction petition, he may not file another. Finally, none of the "limited circumstances" provided in §§ 40-30-117(a)(1)-(a)(4) apply to this claim. Therefore, the "motion-to-reopen" provision in § 40-30-102(c) is inapplicable.

For the reasons explained above, this factual predicate is procedurally defaulted under Tennessee law. Therefore, the court may not hear this part of his claim, absent a showing of cause and prejudice or actual innocence. The petitioner has made no effort to make a showing of cause and prejudice. Neither has he shown that he is actually innocent. Therefore, the second part of this

claim is procedurally defaulted for purposes of federal *habeas corpus* review.

**Certificate of Appealability**

The court finds that the petitioner has not made a substantial showing of a denial of a constitutional right with respect to the first part of this claim. Therefore, a COA will not issue as to this part of this claim.

As to the petitioner's claim pertaining to his alleged "incoherent and unwieldy" testimony at trial, when the district court denies a *habeas corpus* petition on procedural grounds without reaching the merits of the petitioner's underlying constitutional claims, a certificate of appealability will issue only under the following conditions: 1) "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right"; and 2) "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. The court finds that jurists of reason would not find it debatable that the court was correct in its procedural ruling. Accordingly, a COA will not issue as to the second part of this claim.

**IV. CONCLUSION**

For the reasons explained herein, the petitioner's request for federal *habeas corpus* relief will be denied and this action dismissed. For the reasons also explained herein, a COA will not issue as to any of the petitioner's claims.

An appropriate Order will be entered.

Aleta A. Trauger
United States District Judge